[Birmingham Mineral Railroad Co. v. Jacobs.]

# Birmingham Mineral Railroad Co. v. Jacobs.

*Action against a Railroad Company for Damages, by Administratrix of Deceased Employé.*

1. *Engineer's right to presume compliance with the statute by the employés of an intersecting road.*—An engineer when approaching a crossing has a right to presume that the employés upon a train on an intersecting road will comply with the statute, and stop their train within one hundred feet of the crossing; and when, in an action against a railroad for the killing of an engineer on an intersecting road caused by a collision at the crossing, it is shown that the employés upon the defendant's train, when approaching the crossing, failed to stop within the distance required by law, it will be presumed, without further evidence, that the injury was caused by the negligence of the defendant.

2. *Duty of engineer when approaching a railroad crossing.*—Although the engineer on an engine of a railroad having the older right of way can presume, when approaching a crossing, that the employés of a train on the intersecting road will stop their train as required by law, it is his duty to keep a lookout for approaching trains; and if, in the face of facts reasonably indicating that the approaching train on the intersecting road is not going to stop at said crossing, the engineer attempts to cross, he is chargeable with negligence.

3. *Question of negligence submitted to the jury.*—In an action against a railroad to recover damages for injuries alleged to have been sustained, by reason of negligence, the questions, whether the damage complained of was occasioned entirely by the negligence of the defendant or its employés, or whether the plaintiff by his own negligence so far contributed to his own misfortune, that but for such contributory negligence on his part the injury complained of would not have been inflicted, are for the determination of the jury under proper instructions from the court.

4. *Charge making ignorance of the law an excuse for its violation properly refused.*—In an action against a railroad for the alleged negligent killing of plaintiff's intestate by a collision between the defendant's train and an engine on the dummy line upon which the intestate was the engineer, a charge which asserts that, "if the jury find for the plaintiff, in assessing the damages as a punishment to the defendant, they might look to the fact that at the time of the alleged injury, the law was in some doubt as to whether a dummy railroad was a railroad within the meaning of the statute, requiring the stoppage of

[Birmingham Mineral Railroad Co. v. Jacobs.]

trains within 100 feet of the crossing of a railroad," is properly refused; the charge making the defendant's employés' alleged ignorance of the law an excuse for its violation.

5. *Charges to the jury.*—In an action to recover damages against a railroad, where the plaintiff counts upon the alleged negligence of the defendant's "engineer, conductor, servants or agents," in charge of the train, an instruction that the jury "can not find from the evidence that the engineer in charge of the engine propelling defendant's freight train was guilty of negligence," is properly refused, since, if the engineer was not negligent, other employés on the defendant's train, upon whom rested duties, might have been negligent, and because the question of negligence was one for the jury.

6. *Misleading charges.*—In an action against a railroad for injuries resulting from a collision of one of defendant's freight trains with a passenger train on a dummy line, at their point of intersection, a charge to the jury, "that the engineer in charge of the engine propelling the passenger train, should exercise more care than the engineer in charge of the engine propelling the freight train," is properly refused, as being calculated to mislead the jury, and as asserting a principle, which if ever true, had no application to the case at bar.

7. *Charges properly refused when disregarding positive statutory requirements.*—In an action against a railroad to recover damages, caused by a collision at the intersection of defendant's road with a dummy line, an instruction that if "at the time defendant's said servants failed to stop said train they did not know, and had no good reason to believe, that the dummy train was about to cross defendant's track, then the failure to make such a stop would not be negligence on the part of the defendant's employés," is properly refused, since it ignores the positive requirements of the statute.

8. *Charge to the jury; properly refused when misleading.*—In an action against a railroad company to recover damages for the alleged negligence of "its engineer, conductor, servants and agents," in charge of one of its trains, an instruction to the jury, that "the only negligence for which the plaintiff can recover under the evidence in this case is the negligence of the conductor in not stopping defendant's train before reaching the crossing," is properly refused, as being calculated to mislead the jury, and as taking from them the consideration of the negligence of defendant's other employés.

APPEAL from the Circuit Court of Jefferson.

Tried before the HON. JAMES B. HEAD.

This was an action on the case, brought by the appellee, Hannah Jacobs, as the administratrix of the estate of Peter Jacobs, deceased, against the Birmingham Mineral Railroad Company, and sought to recover damages for the alleged wrongful and negligent killing of plaintiff's intestate. The death of the plaintiff's intestate re-

sulted from a collision of one of the defendant's freight trains with an engine and train of the Ensley Railway, which was a dummy line, at the point of intersection of the defendant's road with the Ensley Railway ; the plaintiff's intestate being the engineer on the dummy engine. The negligence complained of is alleged as follows in the third count of the complaint : ''That defendant, through its engineer, conductor, servants and agents aforesaid so in charge of defendant's said engine and train, negligently and carelessly failed to cause its said engine and train to come to a full stop within one hundred feet of the said crossing, and negligently proceeded before they knew the way to be clear. And defendant, through its servants and agents, negligently and carelessly managed, run and operated said engine and train ; negligently run said train toward and to said crossing at a high rate of speed, and negligently run said train backward towards and to said crossing, and negligently run said train towards and to said crossing without keeping a proper lookout ; by reason of which said negligence and carelessness of defendant, its said train ran against the said engine and train upon which plaintiff was as aforesaid, in consequence of which plaintiff's intestate was so injured that he died.'' The other facts of the case as disclosed on this appeal, are sufficiently stated in the opinion.

Among the written charges requested by the defendant, and to the refusal to give each of which the defendant separately excepted, were the following :    (5.) "If you believe the evidence, the defendant's train was approaching the dummy track in plain view of the first railroad crossing reached by the dummy train, when the dummy engine was on such crossing.''    (6.) ''If you believe the evidence, the defendant's train was approaching the dummy track in plain view of the first railroad crossing reached by the dummy train, when the dummy engine was on such crossing, and there is no evidence tending to show that defendant's train at such time and from such place was hid by the banks of any cut or other obstruction.''    (7.)    ''If you believe the evidence, there was nothing to prevent the plaintiff's intestate from seeing the defendant's approaching train when the dummy engine was on the railroad crossing first reached by it.''    (8.)    ''If the jury find for the plaintiff, in assessing the damages as a punishment to

defendant, they may look to the fact that at the time of the alleged injury, the law was in some doubt as to whether the Ensley Dummy road was a railroad within the meaning of the statute requiring the stoppage of trains within one hundred feet of the crossing of a railroad." (12.) "You can not find from the evidence that the engineer in charge of the engine propelling the defendant's freight train was guilty of negligence." (16.) "I charge you, gentlemen of the jury, that an engineer in charge of an engine propelling a passenger train, should exercise more care than an engineer in charge of an engine propelling a freight train." (19.) "I charge you, gentlemen of the jury, that if you shall believe from the evidence that the defendant's servants managing and controlling defendant's train failed to stop defendant's train within one hundred feet of the crossing of the dummy track, and if you shall further believe from the evidence that at the time defendant's servants failed to stop said train they did not know and had no good reason to believe that the dummy train was about to cross defendant's track, then the failure to make such a stop would not be negligence on the part of defendant's employés." (20.) "It was the duty of the plaintiff's intestate to know that the way across defendant's track was clear, or to look up and down defendant's track to see if a train was approaching thereon, before he attempted to cross the same with his dummy engine and train, and if the jury believe from the evidence that by looking up and down defendant's track, he could have seen the approach of defendant's train in time to have avoided the injury, then you must find for the defendant." (21.) "If the jury believe from the evidence that plaintiff's intestate could have seen defendant's train approaching the crossing in time to have avoided the injury by looking, and that he omitted to look, or looking saw defendant's train approaching the crossing and near thereto, and he undertook to cross his dummy engine across in front of such approaching train of defendant, he was guilty of such negligence as will preclude recovery in this action." (22.) "Although the jury may believe from the evidence that the servants and agents of defendant neglected to use due care and diligence to avoid the collision, this did not relieve the plaintiff's intestate from the necessity of taking due

care and precaution for his safety. Before attempting to cross the railroad track of defendant with his dummy engine and train, plaintiff's intestate was bound to use his senses to look and to listen for an approaching train on defendant's track in order to avoid a collision in this case. If he omitted to use his senses of sight and hearing, and propelled his dummy engine thoughtlessly on the track of defendant's railroad, or, if using them, he saw or heard the approaching train of defendant on the track, and instead of waiting for it to pass, he undertook to cross the track of defendant's railroad with his dummy engine and train in front of defendant's approaching train and was injured thereby, he so far contributed to the injury complained of in this complaint as to deprive the plaintiff of any right of recovery." (23.) "The only negligence for which the plaintiff can recover, under the evidence in this case, is the negligence of the conductor in not stopping defendant's freight train before crossing the dummy track, if the jury believe, from the evidence, that said freight train did not stop for such crossing." (27.) "The court charges the jury that an engineer pulling a passenger train with passengers aboard his train, who sees a freight train approaching the crossing of his railroad and another railroad, and said freight train, when so seen, is near enough to collide with the passenger train, unless such freight train should be brought to a stop, provided the passenger train should proceed to cross in front of the approaching freight, the said passenger train should not attempt to cross before such approaching freight train, and if the engineer of such passenger train should so attempt to cross and should be injured and killed thereby, then I charge you that in such case, there could be no recovery by the administrator of such engineer, unless the injury was inflicted willfully, wantonly or recklessly." (29.) "If the jury believe from the evidence in this case that the plaintiff's intestate could have discovered the approach of defendant's train by the exercise of ordinary care, such as an ordinarily prudent man would have exercised under like circumstances, in time to have avoided the alleged injury, they must find for the defendant." (30.) "It was the duty of plaintiff's intestate to have kept a vigilant lookout for an approaching train on defendant's

track, and if the jury believe from the evidence that plaintiff's intestate could have seen the approach of defendant's train by the exercise of ordinary care and diligence, such as an ordinarily prudent man would have exercised, under like circumstances, in time to have avoided the alleged injury, they must find for the defendant." (31.) "If the jury believe from the evidence that the plaintiff's intestate could have seen the approach of defendant's train by looking, in time to have avoided the injury, and that he failed to look, or looking, saw the train approaching, and he undertook to pass over in front of defendant's train, they must find for the defendant." (32.) "If the jury believe from the evidence in this case, that plaintiff's intestate could have discovered the approach of defendant's train by the exercise of ordinary care, such as an ordinarily prudent man would have exercised under like circumstances, in time to have avoided the alleged injury, they must find for the defendant." (33.) "If the jury believe from the evidence that plaintiff's intestate could have seen the approach of defendant's train by looking, in time to have avoided the injury, and that he failed to look, or looking saw the train approaching, and he undertook to pass over in front of the defendant's train, they must find for the defendant." (38.) "If the jury believe from the evidence that plaintiff's intestate could have seen defendant's train approaching the crossing in time to have avoided the injury by looking, and that he omitted to look, or looking saw defendant's train approaching the crossing and near thereto, and he undertook to cross his dummy engine across in front of such approaching train of defendant, he was guilty of such negligence as will preclude a recovery in this action." (39.) "It was the duty of plaintiff's intestate to have kept a vigilant lookout for an approaching train on defendant's track, and if the jury believe from the evidence that plaintiff's intestate could have seen the approach of defendant's train by the exercise of ordinary care and diligence, such as an ordinarily prudent man would have exercised under like circumstances, in time to have avoided the alleged injury, they must find for the defendant." (40.) "It was the duty of plaintiff's intestate to know that the way across defendant's track was clear, or to look up and down defendant's track to see if a train was approaching thereon,

[Birmingham Mineral Railroad Co. v. Jacobs.]

before he attempted to cross the same with his dummy engine and train, and if the jury believe from the evidence, that by looking up and down defendant's track, he could have seen the approach of defendant's train in time to have avoided the injury, then you must find for the defendant."

There was judgment for the plaintiff, assessing his damages at $10,000. The defendant appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

HEWITT, WALKER & PORTER, for appellant.—1. If the train of the defendant was in dangerous proximity to the dummy crossing, and there was nothing to indicate that it was going to stop for said crossing, the plaintiff's intestate ought not to have acted on the presumption that the defendant's train was going to stop for said crossing. The law required of him care and caution, to guard and provide against possible carelessness of others.—L. & N. R. R. Co. v. Webb, 90 Ala. 185, 8 So. Rep. 518 ; Bellefontaine Railway Co. v. Snyder, 24 Ohio St. 677 ; Zimmerman v. Railroad Co., 71 Mo. 481. 2. The 5th charge requested by the defendant should have been given.—Ivey v. Phefer, 11 Ala. 535 ; Brandon v. Snows, 2 Stewart 255 ; Williams v. Shackelford, 16 Ala. 318 ; Henderson v. Mabry, 13 Ala. 713 ; Nelson v. Williams, 18 Ala. 650.

BOWMAN & HARSH, contra.—(1.) The plaintiff's intestate had the right to rely upon the presumption that defendant's train would stop before crossing the dummy line, until he was put upon notice, actual or constructive, that it would not do so.—Strong v. R. R. Co., 8 Amer. & Eng. R. R. Cases, p. 273 ; Newson v. N. Y. C. R. R. Co., 29 N. Y. 383 ; Massoth Case, 64 N. Y. 532 ; L. & N. R. R. Co. v. Black, 89 Ala. 313 ; 8 So. Rep. 246 ; Hart v. Deveroux, 41 Ohio St. 565 ; Vennal v. Garner, 1 Cr. & M. 21 ; Lucks v. Chicago R. R. Co., 19 Amer. & Eng. R. R. Cas. 305 ; Davis v. N. Y. C. R. R. Co., 47 N. Y. 400 ; Mackey v. N. Y. C. R. R. Co., 35 N. Y. 75 ; Beems v. Chicago R. R. Co., 58 Iowa 150 ; Steele v. Central R. R. of Iowa, 43 Iowa 109. (2.) Charges 5, 6 and 7 were properly refused.—Marx v. Bell, 48 Ala. 497. (3.) The other charges refused by the court should not

have been given.—*Birmingham Min. R. R. Co. v. Jacobs*, 92 Ala. 187, 9 So. Rep. 320 ; *Ensley R. Co. v. Chewning*, 93 Ala. 24, 9 So. Rep. 458 ; *Cobb v. Malone*, 92 Ala. 630, 9 So. Rep. 738 ; Sedgwick on Damages (8th Ed.), §§ 1320, 1321 ; *Katzenberger, Receiver v. Laws*, Sup. Ct. Tenn., Spring Term, 1891 ; *A. G. S. R. R. Co. v. Hill*, 93 Ala. 514 ; 9 So. Rep. 722.

HARALSON, J.—In this case, on a former appeal, (92 Ala. 187), it was held, under the same state of facts, that the testimony did not tend to show that the collision was willfully caused by defendant's servants, but that the trend of the whole testimony repelled such an inference. It was also held, that the second count did not charge willful negligence. The third count charges no more than mere negligence against the defendant. The pleas were "not guilty" and contributory negligence on the part of the plaintiff's intestate.

The fact that the defendant's train was not stopped, in compliance with the statute, within one hundred feet of the railroad crossing, and was run in the manner and at the rate of speed charged in the third count, is negligence for which the railroad company is liable. The proof tends to establish the truth of this count ; and the case has been tried mainly, if not altogether, on the plea of contributory negligence.

The statute regulating the duties of railroads, when tracks cross each other, is : "When the tracks of two railroads cross each other, engineers and conductors must cause the trains of which they are in charge to come to a full stop, within a hundred feet of such crossing, and not proceed until they know the way to be clear ; the train on the older railroad having the right of way being entitled to cross first."—Code, § 1145.

The defendant's railroad and the Georgia Pacific track ran parallel, and fifty-six feet apart at this crossing, intersected by the Ensley Dummy Railway ; and the Kansas City, Memphis & Birmingham Railroad ran diagonally across both these tracks, three hundred and twenty-five feet from the crossing of the defendant and Ensley Railway tracks, forming with the Georgia Pacific and Kansas City, Memphis & Birmingham Railway and the Ensley Railway, an area in the shape of a triangle, with the defendant's railroad running across the open

end of the triangle, fifty-six feet from and parallel, as above stated, to the first named railroad. This area, as the evidence tended to show, was open, with nothing to obstruct the view, except a few scattering pine trees. It is three hundred and twenty or twenty-five feet, from the crossing, south, to the Kansas City, Memphis & Birmingham railroad, where it crosses the defendant's track ; and, commencing a few feet south of the K. C., M. & B. road, there runs a cut, from five to seven and one-half feet deep. The evidence shows, that at the time the Ensley dummy approached the Georgia Pacific road, there was a freight train on the latter road, completely blocking it up, and obscuring the sight of the crossing below and the triangular area formed by said railroads, described above. At that time, the defendant's freight train, composed of fourteen cars, including the caboose, had stopped eight hundred and sixty-five feet from the Ensley crossing, and beyond the K. C., M. & B. road, with its rear end, at which there was a caboose car, towards the crossing when the accident happened. It used the signal bell, as the evidence tends to show, and backed towards the crossing, having attained a speed of from 4 to 12 miles an hour, as variously stated by different witnesses, at the time it reached the crossing. Just at that moment, the Ensley dummy engine had reached and was upon the crossing, and its engine and the caboose of the defendant's train collided, killing the engineer of the Ensley dummy, the plaintiff's intestate. The evidence tends to show, that the train of the defendant, from the time it commenced to back towards the crossing and until the collision occurred, never halted. It was argued, that the train on the Georgia Pacific road, at the time the dummy engine approached and stopped within ten or fifteen feet of it, and the deep cut above referred to, in which the defendant's train had stopped, shut out the sight of the defendant's train from the dummy engine, and *vice versa*, so that their respective engineers and servants did not see each other, thereby causing them to be unmindful, each, of the approach of the other. We have no evidence whether the engineer on the dummy saw the defendant's approaching train or not, further than that his engine was afterwards found to be reversed, and other persons on the dummy cars, as wit-

nesses, swear they saw the defendant's approaching train, and the passengers got off in consequence. The conductor on the dummy swears he saw the approach of the other train, when it was seventy-five feet from the crossing.

I. The plaintiff's intestate had a right to rely upon the performance by those on the defendant's train, in charge of it, of every act imposed by law on them, when approaching the crossing. The presumption was, that they would stop within a hundred feet of the crossing, as the statute required them to do. It can not be imputed as negligence to him, that he did not anticipate culpable negligence on the part of the employés of defendant. One, in the position of this engineer, called upon to exercise care to avoid danger from the acts of others, might, in regulating his own conduct, have regard to the probable or apprehended conduct of such other persons, and to the presumption that they would act with reasonable caution and not with culpable negligence. And it has been held, that one approaching a railroad crossing in a city is not bound to be on the alert for danger, when he has the assurance given, in the failure of the company to give the statutory signals, that the crossing is safe.—*Beiseigel v. The N. Y. C. R. R. Co.*, 34 N. Y. 622; *Strong v. Placerville R. R. Co.*, 8 Am. & Eng. R. R. Cases, 274; *Bower v. Chicago, M. & St. L. R. R. Co.*, 19 Am. & Eng. R.R. Cases, 301. Without more than that the defendant's servants failed to bring their train to a stop, within the distance required by law, it will be presumed the injury was caused by the negligence of defendant.—Sherman on Contributory Negligence, § 469; *Huckshoed v. St. Louis &c. R. R. Co.*, 90 Mo. 548; *Beiseigel v. N. Y. C. R. R. Co.*, 34 N. Y. 622.

II. But, on the other hand, all the authorities, so far as we have seen, agree, and it certainly accords with sound principle, that it was the duty of the deceased, before he undertook to cross the track of the defendant, to look out for approaching trains, and the manner and speed with which they might come. This was his duty, notwithstanding his train had the right of way by law, and it was culpable negligence in the defendant's employés not to accord it to him, and he might presume they would not violate their legal obligation. He had no right to close his eyes to the approaching train, if he

was in a position to see. In the absence of all apparent danger, the deceased would not be negligent in crossing defendant's track. He was not authorized, however, to indulge a presumption that the other company would comply with the law, in the face of facts reasonably indicating that they would not. That presumption authorized him to proceed with his train up to the danger line, which no prudent person, in the exercise of that degree of caution for his own and the safety of others entrusted to him, should cross, without being chargeable with negligence. That line lay just where a person occupying his position, observing the prudence he ought to have observed, could reasonably see that the defendant's employés were not going to make the stop. The presumption, which the law authorized him to indulge, that they would comply with the law gave way, and no longer existed, if, and when, it became reasonably apparent that they did not intend to stop. The highest degree of care, was upon him just there, without reference to the carelessness of the defendant's agents. In such an emergency, it is not enough that the chances are equally balanced; nice calculations should not be made. The decided weight of probability should be against the chances of a collision. The contention on the part of appellant, that it was his duty to stop his train when it *did not* appear the other would stop, or *without knowing* it would do so, in the absence of the dangerous proximity of the other, sets aside the presumption that the law authorized him to indulge, that the defendant would not be guilty of the culpable negligence of violating the law. It asserts the doctrine, that it was his duty to presume the other would not do its duty, while the law is, he had the right to presume it would.—*Bellefontaine Railway Co. v. Snyder*, 24 Ohio St. 676; *Meek v. Penn. Co.*, 38 Ohio St. 682; *Belton v. Baxter*, 54 N. Y. 245; *Wendell v. N. Y. C. R. R. Co.*, 91 N. Y. 420; *Strong v. Placerville R. R. Co.*, 8 Am. & Eng. R. R. Cases, 274; Pierce on Railroads, pp. 343, 345–6.

III. That there was carelessness somewhere is evidenced by the fact, that two trains, running in the day time in nearly an open country, on two tracks, at right angles to each other, should have collided. If the deceased was negligent, we are not permitted to compare

his with defendant's negligence, or to set-off the one against the other, or find against the guiltiest, but the enquiry is,—the defendant's guilt being admitted,—was the deceased guilty of any negligence which contributed proximately to his injury?

We stated in the *S. & N. A. R. R. Co. v. Schaufler*, 75 Ala. 141, that the proper enquiries were : (1), Whether the damage complained of was occasioned entirely by the negligence or wrongful act of the defendant or its servants; or, (2), whether the plaintiff, by his own negligence, or want of ordinary care and prudence, so far contributed to his own misfortune, that, but for such contributory negligence on his part, the misfortune complained of, as the basis of the action, would not have happened.—2 Sherman & Redfield on Negligence, § 467. These are matters for the determination of the jury, under the evidence in the case.

The court, at the instance of the defendant, gave the following charges to the jury, which stated the law as favorably for defendant as could be : (A.) "Though the law requires engineers and others running trains to stop their trains within one hundred feet of railroad crossings, yet an engineer, who sees another train approaching said crossing under such circumstances as would indicate to a reasonable man that such approaching train was not going to stop for the crossing, should not attempt to cross in front of such moving or approaching train, although he may have complied with the law in stopping for the crossing; and if he attempts to do so and is injured thereby, he would be guilty of such negligence as would preclude a recovery by him for such injury." (B.) "If the jury believe from the evidence that plaintiff's intestate could have avoided the alleged injury by the exercise of extraordinary care and diligence, then plaintiff can not recover in this action." (C.) "I charge you, gentlemen of the jury, that the law required of the plaintiff's intestate the exercise of extraordinary diligence in the management and control of the dummy engine."

Applying the principles stated in this opinion to the charges requested by defendant and refused, we hold, that all of them which we do not specifically notice, were contrary to the principles we have announced above, as touching the presumption the law authorized the engineer

of the dummy line to indulge, that the persons in control of the defendant's train would do their duty; and thus, plainly, or in forms more or less subtle, seek to put the responsibility on him, *if it did not appear,* or *he did not know* that the other train would stop, and they are subject, for the most part, to the objection of being misleading and confusing.

Nos. 25, 26, 35 and 37 were passed on, on the other appeal, and are not insisted on now. Nos. 24 and 36 are general charges, on the effect of the evidence, and were properly refused. Charges 5, 6 and 7 were properly refused, since they ignore the presumption the law authorized the dummy engineer to indulge, that defendant's train would obey the law, and they were, besides, calculated to confuse and mislead. The refusal to give them is justified on these grounds. Charge 8 was bad in that it makes defendant's employés' alleged ignorance of law an excuse for its violation.

No. 12 was properly refused. If it were admitted that the engineer was not guilty of negligence, others of the employés, on whom rested duties, might have been. Besides, we must presume he knew the road, the distance between the crossings, the length of his train, the speed it was moving, and that it was not going to stop, so far as he was concerned; and whether he was guilty of negligence or not, under these circumstances, was a question for the jury. No. 16 was calculated to mislead and confuse the jury, and the principle it asserts, if ever true, has no application to this case, and cases of this character. No. 19 was an incorrect charge, in that it ignores and altogether disregards, as a duty to be observed by the defendant train, the positive requirement of the statute, for it to come to a stop within 100 feet of the crossing of two railroad tracks.

No. 23 was calculated to confuse and mislead the jury, and took from them the consideration of the negligence, if it existed, of the other employés of the company. Besides, it does not follow, that because the negligence of the conductor was the only negligence which entitled the plaintiff to recover, that she is not entitled to recover at all. Charges 20, 21, 22, 27, 29, 30, 31, 32, 33, 38, 39 and 40 each ignored the presumption the dummy engineer was authorized to indulge, as to the other train complying with the law, in giving his train, having the

11

[Hauerwas et al. v. Goodloe, Receiver.]

older right of way, the right to cross first, and of itself coming to a full stop before attempting to cross, and in that they are each confusing and calculated to mislead, being too indefinite as to the proximity of the approaching train, its speed, and in their hypothesis of danger.

There were other assignments of error on account of the admission of evidence against defendant's objection, but they seem to be without merit, are not insisted on in argument, and are, therefore, waived.

Affirmed.